[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR PROTECTIVE ORDER DATED SEPTEMBER 30, 2000
The defendant, Beth Ann Carpenter, moves for a protective order prohibiting the state from using certain materials as evidence against her at trial. The material consists of twenty-four written documents turned over to the state by Irish authorities. The defendant asserts that these materials are protected by the attorney-client privilege. Hearings on this motion were held on September 19, 2001 and October 16, 2001. The motion requires resolution of two issues. First, whether the material in question was ever protected by the attorney-client privilege. Second, if the material was so protected, whether protection was lost through waiver or abandonment. This memorandum of decision will address only the first issue. For the reasons set forth below, the court finds that seventeen of the twenty-four items are protected by the privilege.[1]
 I FACTS
The following statement of facts is based on the evidence offered by the defendant. The state has reserved the right to rebut these facts and the defendant has reserved the right to counter the rebuttal. On the initial question of the applicability of the attorney-client privilege, the state argues that even assuming the truth of the defense version of facts, the items in question are not now and never were privileged material.
In this context, the defendant asserts the following facts:
In June, 1994, the defendant retained Attorney Hugh F. Keefe to represent her relative to the police investigation of the murder of Anson B. Clinton, III. From June, 1994 to November, 1997, Attorney Keefe corresponded with the defendant. During this time, the defendant lived in London, England and later in Dublin, Ireland. Attorney Keefe assumed that his correspondence to the defendant was protected by the attorney-client privilege.
While the defendant was out of the country, her mother, Cynthia Carpenter, regularly faxed newspaper articles printed in the New London Day newspaper to Attorney Keefe's office in New Haven. These articles related to the Anson Clinton homicide investigation and were faxed from a pharmacy in Ledyard, Connecticut.
On October 28, 1997, a Connecticut Superior Court judge issued an arrest warrant for the defendant on the charge of capital felony murder.
On October 30, 1997, Cynthia Carpenter went to Dublin to see the defendant. She checked into the Hotel Capri renting a room using a credit CT Page 15632 card. Thereafter, the defendant came to the hotel room. She was carrying a backpack. While in the hotel room, the defendant showed Cynthia Carpenter a sealed envelope addressed to Attorney Keefe. The defendant asked Cynthia Carpenter to bring the envelope to Attorney Keefe when she returned to Connecticut. After remaining in the hotel room a short time, the two left leaving the backpack and envelope in the room.
Neither the defendant nor Cynthia Carpenter ever slept at the room at the Hotel Capri. That day they traveled to Howth spending the night at a hotel near there. Although Cynthia Carpenter spent several days in Ireland with the defendant, she never returned to the Hotel Capri. During this time the defendant was in contact with Attorney Keefe and was also making efforts to hire a local Irish solicitor.
On or about November 2, 1997, Cynthia Carpenter contacted the Hotel Capri to obtain her belongings. She was informed that all of the items left in the room were in the custody of the local Irish police. Upon making inquiry at the police station, she was informed that the items would not be returned. Cynthia Carpenter left Ireland on November 5, 1997 without her belongings and without the envelope addressed to Attorney Keefe.
In August, 1999, as part of their investigation, members of the Connecticut State Police went to Ireland. While there, Irish authorities gave them copies of the correspondence from Attorney Keefe to the defendant and other papers that were obtained from the room at the Hotel Capri. These items were thereafter turned over to the State's Attorney's Office. The twenty-four items in question consist of the following:
Exhibit 1 Letter from Attorney Keefe to defendant dated 11/8/95
 Exhibit 2 Fax cover sheet from Attorney Keefe to defendant with attached news articles
Exhibit 3 Letter from Attorney Keefe to defendant dated 3/26/96
 Exhibit 4 Fax cover sheet from Attorney Keefe to defendant with attached news articles
 Exhibit 5 Fax cover sheet from Attorney Keefe to defendant with attached news article
 Exhibit 6 Fax cover sheet from Attorney Keefe to defendant with attached news article
 Exhibit 7 Fax cover sheet from Attorney Keefe to CT Page 15633 defendant with attached Conn. Law Tribune article
Exhibit 8 Letter from Attorney Keefe to defendant dated 4/22/96 (3 copies)
Exhibit 9 Letter from Attorney Keefe to defendant dated 6/24/96
 Exhibit 10 Letter from State's Attorney Kevin Kane to Attorney Keefe dated 7/8/96
 Exhibit 11 Letter from Attorney Keefe to defendant dated 7/9/96 with attached arrest warrant affidavits for Haiman L. Clein and Mark J. Despres
 Exhibit 12 Letter from Attorney Keefe to defendant dated 7/11/96 with attached Conn. Law Tribune article
Exhibit 13 Hotel Capri check-in card
Exhibit 14 Letter from Direct Funding to defendant dated 9/6/97
 Exhibit 15 Conn. Law Tribune article with Lynch, Traub, Keefe Errante fax imprint
Exhibit 16 News articles faxed from Ledyard Pharmacy
Exhibit 17 News article with Lynch, Traub, Keefe Errante fax imprint
Exhibit 18[2] News articles faxed from Ledyard Pharmacy
Exhibit 19 Fax cover sheet from defendant to Attorney Keefe
Exhibit 20 Fax cover sheet from defendant to Attorney Keefe
Exhibit 21 Handwritten notes
Exhibit 22 Copies of calendar with handwritten notes
Exhibit 23 Handwritten notes
Exhibit 24 Conn. Law Tribune article with "LTKE" fax imprint
 II 
CT Page 15634 DISCUSSION 
The state's argument is that the material in question, consisting of newspaper articles, arrest warrants and applications, a letter from the State's Attorney to defense counsel and letters from defense counsel to the defendant are not now and never were protected by the attorney-client privilege. In support of this position, the state asserts (1) that the items sent to the defendant do not contain confidential information or legal advice; (2) that Attorney Keefe's representation of the defendant was fully disclosed to the state years prior to the seizure of the material and, in any event, fee agreements are not covered by the privilege; and (3) the defendant could not create a privilege by putting nonprivileged material in an envelope addressed to her lawyer.
The defendant asserts that the documents, when viewed in conjunction with Attorney Keefe's letters, reveal an ongoing legal strategy and are "inextricably linked" to the legal advice rendered by Attorney Keefe. Moreover, the defendant argues that, in the present context, the potential chilling effect on attorney-client communication outweighs the reason for disclosure such that application of the privilege is required.
Our Supreme Court on several occasions has affirmed the importance of the attorney-client privilege and recognized the "longstanding public policy of protecting attorney-client communications." Metropolitan LifeIns. Co. v. Aetna Casualty Surety Co., 249 Conn. 36, 48, 730 A.2d 51
(1999); Shew v. Freedom of Information Commission, 245 Conn. 149, 157,714 A.2d 664 (1998). In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice. Olson v. Accessory Controls Equipment Corp., 254 Conn. 145, 157 (2000), quoting Metropolitan LifeIns. Co. v. Aetna Casualty Surety Co., supra, 52. The privilege fosters "full and frank communications between attorneys and their clients and thereby promotes the broader public interests in the observation of law and the administration of justice." Olson v. Accessory Controls andEquipment Corp., supra, 157; Upjohn Co. v. United States, 449 U.S. 383,389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications."Metropolitan Life Ins. Co. v. Aetna Casualty Surety Co., supra, 52.
The privilege, however, is not unlimited in scope. A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be "inextricably linked" to the CT Page 15635 giving of legal advice. Ullmann v. State, 230 Conn. 698, 713, 647 A.2d 324
(1994).
Applying these legal principles to the present case, the court is persuaded that, for the most part, the privilege should apply. The state correctly points out that the newspaper articles, copies of their own correspondence to Attorney Keefe, arrest warrants, and the fact of Attorney Keefe's representation of the defendant are all nonconfidential in the sense that the state can retrieve this information from sources other than the seized material. But that is not the point. An article in a newspaper, by itself, is neither confidential nor relevant to a defendant's guilt, particularly when it relates to the investigation of persons other than the defendant. But when a lawyer picks that specific article to send to his client, it may become probative of possible involvement in a crime. The point is that the lawyer's judgment is a form of communication that is protected because such communication is inextricably linked to the giving of legal advice Ullmann v. State, supra, 713.
Applying this analysis to the exhibits in question, those items that were transmitted by Attorney Keefe to the defendant or sent by the defendant to Attorney Keefe are protected by the privilege. In this category are Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 15, 17, 19, 20 and 24. As to the other exhibits, the defendant has not established that these items were communications that arose out of the attorney-client relationship. The privilege, therefore, does not apply to Exhibits 13, 14, 16, 18, 21, 22 or 23.
 CONCLUSION
For the reasons set forth above, and based on the present record, the court finds that Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 15, 17, 19, 20 and 24 were protected by the attorney-client privilege. Whether that privilege was lost through waiver, abandonment or other exception remains an issue to be resolved after the parties have had the opportunity to offer further evidence. As to Exhibits 13, 14, 16, 18, 21, 22, 23, the record does not establish that these are privileged because there is no evidence that they are communications arising out of an attorney-client relationship.
So Ordered at New London, Connecticut, this 20th day of November, 2001.
Devlin, J.