KATHERINE MAXWELL, CONTROLLER OF THE
TOWN OF WINDHAM, ET AL. *v.* FREEDOM
OF INFORMATION COMMISSION ET AL.
(SC 16567)

Sullivan, C. J., and Borden, Norcott, Vertefeuille and Zarella, Js.

Argued November 28, 2001—officially released April 16, 2002

court, *Wiese, J.;* judgment dismissing the appeal, from which the plaintiffs appealed. *Affirmed.*

*Richard S. Cody,* for the appellants (plaintiffs).

*Victor R. Perpetua,* appellate attorney, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellee (named defendant).

*Opinion*

VERTEFEUILLE, J. This appeal presents two issues for our consideration, namely, whether (1) retroactive application of General Statutes § 52-146r,[1] which prevents disclosure of confidential communications between a government attorney and its agency client, would prevent the disclosure of certain documents pursuant to the Freedom of Information Act (act), specifically General Statutes § 1-210,[2] and (2) in enacting § 1-

[1] General Statutes § 52-146r provides: "(a) As used in this section:

"(1) 'Authorized representative' means an individual empowered by a public agency to assert the confidentiality of communications that are privileged under this section;

"(2) 'Confidential communications' means all oral and written communications transmitted in confidence between a public official or employee of a public agency acting in the performance of his or her duties or within the scope of his or her employment and a government attorney relating to legal advice sought by the public agency or a public official or employee of such public agency from that attorney, and all records prepared by the government attorney in furtherance of the rendition of such legal advice;

"(3) 'Government attorney' means a person admitted to the bar of this state and employed by a public agency or retained by a public agency or public official to provide legal advice to the public agency or a public official or employee of such public agency; and

"(4) 'Public agency' means 'public agency' as defined in section 1-200.

"(b) In any civil or criminal case or proceeding or in any legislative or administrative proceeding, all confidential communications shall be privileged and a government attorney shall not disclose any such communications unless an authorized representative of the public agency consents to waive the privilege and allow such disclosure."

[2] When the proceedings in this case began in 1998, the act was codified at General Statutes § 1-7 et seq. In 1999, the act was transferred to General Statutes § 1-200 et seq. References herein are to the current codification of the act.

General Statutes § 1-210 provides in relevant part: "(a) Except as otherwise

210 (b) (10), the legislature unconstitutionally delegated to the named defendant, the freedom of information commission (commission), the authority to define the attorney-client privilege in violation of the separation of powers doctrine embodied in the Connecticut constitution. We conclude that § 52-146r, if applied retroactively, would not prevent the disclosure of the documents at issue, and that the action of the legislature in enacting § 1-210 (b) (10) was constitutionally sound.

The plaintiffs, Katherine Maxwell, the controller of the town of Windham, and the town of Windham, appealed to the Appellate Court from the judgment of the trial court affirming the decision of the commission ordering the disclosure of certain documents pursuant to the act. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The following facts and procedural history are relevant to our resolution of this appeal. Pursuant to the act, the defendant Steven Edelman[3] requested disclosure by the plaintiffs of "all [of the town's] legal bills, receipts, itemized statements and similar instruments since 1994." Maxwell informed Edelman that while some of these records were available for inspection, certain billing invoices of the Windham town counsel, Richard Cody, were exempt from disclosure because they involved pending litigation.[4] Edelman subsequently filed a complaint with the commission requesting that the plaintiffs be compelled to disclose the invoices.

provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-212. . . ."

[3] Edelman is not a party to this appeal.

[4] These disputed invoices will be referred to herein as "the invoices."

The plaintiffs claimed before the commission that the invoices were exempt from disclosure pursuant to two exemptions in the act. The first exemption claimed was based on § 1-210 (b) (10), which shields from disclosure, among other things, "communications privileged by the attorney-client relationship . . . ." The plaintiffs also claimed exemption under § 1-210 (b) (4), which bars disclosure of "[r]ecords pertaining to strategy and negotiations with respect to pending claims or pending litigation to which the public agency is a party until such litigation or claim has been finally adjudicated or otherwise settled . . . ."

The commission first concluded that the plaintiffs had not proven that the invoices "contain confidential communications within the meaning of the attorney-client privilege exemption" under § 1-210 (b) (10). With respect to the second claimed exemption, the commission concluded that the plaintiffs "failed to prove that the counsel bills pertain to strategy and negotiations with respect to pending claims or pending litigation within the meaning of § 1-210 (b) (4) . . . ."[5] Accordingly, the commission ordered the plaintiffs to disclose the invoices.

The plaintiffs then appealed from the final decision of the commission to the trial court. They claimed, inter alia, that § 52-146r, which took effect after the commission rendered its decision,[6] should be applied retroactively and required reversal of the decision of the commission. They also contended that § 1-210 (b) (10) constituted an unconstitutional delegation to the commission of the authority to define the attorney-client privilege in violation of the separation of powers

[5] The plaintiffs do not argue in this court that the invoices were exempt from disclosure under § 1-210 (b) (4) as documents pertaining to litigation strategy or negotiation.

[6] The commission rendered its decision on April 28, 1999. Section 52-146r took effect on October 1, 1999. See Public Acts 1999, No. 99-179, § 1.

doctrine. The trial court rejected both claims and affirmed the decision of the commission. This appeal followed.

I

The first issue that we address is whether the enactment of § 52-146r requires reversal of the decision of the commission. The plaintiffs claim that § 52-146r, which provides that the attorney-client privilege applies to communications between government attorneys and the public agencies by which they are employed, should apply retroactively to the commission's decision, and that such application would result in reversal of the decision that the invoices were not subject to the attorney-client privilege. The commission claims that § 52-146r was a substantive change in the law and thus must be applied prospectively only. We conclude that the language and legislative history of § 52-146r demonstrate that the statute was intended to codify the preexisting law pertaining to the attorney-client privilege. Therefore, irrespective of whether § 52-146r applies prospectively or retroactively, that statute does not require reversal of the decision of the commission.

We begin by setting forth the standard of review that governs our examination of this issue. Determining the effect of § 52-146r on the decision of the commission is an issue of statutory construction. Our review of the trial court's decision therefore is plenary. See *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999).

When construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation

and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994); *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994).

We begin our analysis with the language of § 52-146r (b), which provides: "In any civil or criminal case or proceeding or in any legislative or administrative proceeding, all confidential communications shall be privileged and a government attorney shall not disclose any such communications unless an authorized representative of the public agency consents to waive the privilege and allow such disclosure." The term "[c]onfidential communications" is defined in § 52-146r (a) (2) as "all oral and written communications transmitted in confidence between a public official or employee of a public agency acting in the performance of his or her duties or within the scope of his or her employment and a government attorney relating to legal advice sought by the public agency or a public official or employee of such public agency from that attorney, and all records prepared by the government attorney in furtherance of the rendition of such legal advice . . . ."

Prior to the enactment of § 52-146r, we held in *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 158, 714 A.2d 664 (1998), that the attorney-client privilege applies to communications between a municipality and its attorney. In adopting the test previously employed by the Appellate Court in that case; *Shew* v. *Freedom of Information Commission*, 44 Conn. App. 611, 620–21, 691 A.2d 29 (1997); we defined the privilege as follows: "[C]ommunications to an attorney for a public agency are protected from disclosure by privilege if the following conditions are met: (1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the

communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence." (Internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 159.

A comparison of our articulation of the privilege in *Shew* and the language of § 52-146r demonstrates that the essential elements of the common-law and statutory privileges are identical. At their core, both the common-law and statutory privileges protect those communications between a public official or employee and an attorney that are confidential, made in the course of the professional relationship that exists between the attorney and his or her public agency client, and relate to legal advice sought by the agency from the attorney.

The legislative history of § 52-146r buttresses our conclusion that that statute merely codifies the common-law attorney-client privilege. Representative Paul R. Doyle, a proponent of the bill that ultimately became § 52-146r, made the following remarks on the floor of the House of Representatives: "What this bill does is it clarifies, recently the Connecticut Supreme Court determined that clearly a municipality and a lawyer have [an] attorney-client privilege agreement too. But the trouble is that does not clarify whether or not state officials and their attorneys have an attorney-client privilege. The overall attorney-client privilege is basically a common law right. And this just clarifies that there is a statutory attorney-client privilege between a state official and an employee." 42 H.R. Proc., Pt. 10, 1999 Sess., pp. 3609–10. Representative Doyle's remarks make clear the legislature's intention that § 52-146r merely codify the common-law attorney-client privilege as this court previously had defined it.

The commission correctly applied the common-law attorney-client privilege in concluding that the invoices

were not exempt from disclosure. Although the commission did not refer to our decision in *Shew* explicitly, the commission in its final decision cited *LaFaive* v. *DiLoreto*, 2 Conn. App. 58, 476 A.2d 626, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984), and *Ullmann* v. *State*, 230 Conn. 698, 647 A.2d 324 (1994), in setting forth the elements of the attorney-client privilege. *Shew*, *LaFaive* and *Ullmann* all enunciate the same well established common-law elements of the attorney-client privilege; § 52-146r merely codified those elements.

It is therefore unnecessary to decide the issue of whether § 52-146r applies prospectively or retroactively. That statute, even if applied retroactively, would not affect the legal standard that the commission applied in deciding that the invoices were not protected by the attorney-client privilege. We therefore reject the plaintiffs' argument that § 52-146r requires reversal of the decision of the commission.

II

We turn now to the plaintiffs' second contention, namely, that the legislature, in enacting § 1-210 (b) (10), violated the separation of powers doctrine embodied in article second of the constitution of Connecticut.[7] Specifically, the plaintiffs claim that § 1-210 (b) (10), by delegating to the commission the authority to define the attorney-client privilege, unconstitutionally intruded upon the authority of the judicial branch. We conclude that § 1-210 (b) (10) does not delegate such authority to the commission, and therefore we disagree with the plaintiffs.

[7] Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides in relevant part: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. . . ."

The plaintiffs' argument is premised upon the assumption that in § 1-210 (b) (10), the legislature has delegated to the commission the authority to define, and therefore eviscerate, the attorney-client privilege. Section 1-210 (b) (10) does not, however, in its language or operation, support that assumption. The statute in no way addresses the authority of the commission. Instead, § 1-210 (b) simply provides that "[n]othing in the [act] shall be construed to require disclosure of . . . (10) . . . communications privileged by the attorney-client relationship . . . ."

At the time the commission rendered its decision in the present case, there was no extant statutory definition of "communications privileged by the attorney-client relationship . . . ." General Statutes § 1-210 (b) (10). The fact that this phrase was left undefined, however, does not mean that the commission was given a blank slate upon which to formulate its own definition of the privilege. "In the absence of guidance from the language of the statute or the legislative history, we look to common law principles . . . . It is assumed that all legislation is interpreted in light of the common law at the time of its enactment." (Internal quotation marks omitted.) *Hunte* v. *Blumenthal*, 238 Conn. 146, 153, 680 A.2d 1231 (1996); see also *Madison Hills Ltd. Partnership II* v. *Madison Hills, Inc.*, 35 Conn. App. 81, 91, 644 A.2d 363, cert. denied, 231 Conn. 913, 648 A.2d 153 (1994). The scope of the exemption for attorney-client privileged communications under § 1-210 (b) (10) prior to the enactment of § 52-146r was therefore defined by reference to the common-law privilege. Thus, the statute simply reinforces the notion that the commission, in rendering its decisions, must apply and respect the privilege when it is asserted. Moreover, any improper failure by the commission to apply the privilege would be subject to judicial review.

Our construction of § 1-210 (b) (10) is bolstered by the legislative history of the act. As we noted in *Rules*

*Committee of the Superior Court* v. *Freedom of Information Commission*, 192 Conn. 234, 240, 472 A.2d 9 (1984), the legislative history of the act expresses a concern with preserving the independence of the judicial branch and avoiding potential separation of powers issues that could arise from conflicts between the act and the prerogatives of the judicial branch. Our conclusion that § 1-210 (b) (10) does not delegate to the commission the authority to define the attorney-client privilege sidesteps a potential clash between the act and the judicial branch, and therefore respects the legislative concern for the independence of the judicial branch. Finally, our conclusion is supported by the well established canon of statutory construction that "when presented with a constitutional challenge to a validly enacted statute . . . [we must] construe the statute, if possible, to comport with the constitution's requirements." Id.

Because we conclude that § 1-210 (b) (10) does not invest the commission with the authority to formulate the attorney-client privilege, we need not address the issue of whether such a delegation is consistent with article second of the constitution of Connecticut.

The judgment is affirmed.

In this opinion the other justices concurred.