JOSEPH MCLAUGHLIN *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(AC 24359)

Foti, McLachlan and Dupont, Js.

Argued March 26—officially released June 1, 2004

*Thomas E. Minogue,* with whom, on the brief, was *George P. Birnbaum,* for the appellant (plaintiff).

*Clifton A. Leonhardt,* chief counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellee (named defendant).

*Aamina Ahmad,* assistant town attorney, for the appellee (defendant Richard V. Bergstresser).

*Opinion*

DUPONT, J. The plaintiff, Joseph McLaughlin, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant freedom of information commission (commission), which denied his request for documents from the defendant Richard V. Bergstresser, first selectman of the town of Greenwich (town). The commission ruled that the requested documents were protected by the attorney-client privilege. On appeal, the plaintiff claims that he is entitled to the documents because the attorney-client privilege was either expressly or impliedly waived by Bergstresser. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. The plaintiff's request for the documents was related to the decision of the Supreme Court in *Leydon* v. *Greenwich,* 257 Conn. 318, 777 A.2d 552 (2001), which held that an ordinance restricting access by nonresidents to a town park with a beachfront was unconstitutional. In response to the decision, the town created a beach task force (task force) to study different options for amending the town's ordinances to comply with the *Leydon* decision.

The plaintiff, a resident of the town, sent a letter to the board of selectmen and the Greenwich Time, a local newspaper, urging one particular solution for nonresident park access. His proposal and the recommendations of the task force were rejected by Bergstresser as being inconsistent with the Supreme Court's decision in *Leydon* on the basis of legal advice the first selectman had received.

Bergstresser and John Wetmore, the town attorney, had received legal advice from Ralph G. Elliot, outside counsel, regarding the various options for bringing the town ordinances in compliance with *Leydon*. On January 14, 2002, the plaintiff requested copies of all legal advice received, and the minutes and summaries of meetings of the task force, in accordance with the Freedom of Information Act (act), General Statutes § 1-200 et seq.[1] On January 24, 2002, Bergstresser responded to the plaintiff's request. He granted the plaintiff access to task force meeting minutes, but declined to furnish copies of legal memoranda, citing the attorney-client privilege.

On February 5, 2002, Bergstresser published an article in the Greenwich Time regarding the town's new beach access plan. In that article, he quoted extensively from a letter by Elliot to support the town's position. The plaintiff then sent another letter to Bergstresser, stating that Bergstresser had waived any privilege that might exist relating to legal advice rendered by Elliot because he had quoted Elliot's letter extensively in the newspaper article. Elliot had prefaced that letter to make it clear that it was written to assist Bergstresser in answering "continuing questions from townspeople about the meaning and scope of [*Leydon*] . . . while . . . avoiding the sort of advice-giving that would transform this letter into a confidential communication protected by the lawyer-client privilege. . . ."

Bergstresser responded to the plaintiff's second letter by furnishing the plaintiff with a copy of the entire letter from Elliot, which had been quoted in part in the newspaper. He did not, however, disclose any addi-

[1] The parties do not dispute that the act is applicable and that the information would be available to the plaintiff as a public record if it were not for the attorney-client privilege exemption of General Statutes § 1-210 (b) (10).

tional documents.[2] The plaintiff then appealed to the commission, claiming that the legal advice given in other documents or letters was not privileged because the privilege had been waived.

A hearing officer of the commission held a hearing and recommended that the plaintiff's appeal should be dismissed. The commission adopted the recommendation and dismissed the plaintiff's appeal. The commission stated that the disclosed document was created for the purpose of explaining the *Leydon* decision and its ramifications to the public, and that the document did not constitute legal advice and therefore was meant to be disclosed. As to the remaining documents, the commission held that they were different in substance from the disclosed document. The documents consisted of legal advice, from either Elliot or Wetmore, which were written in the course of a professional relationship, in response to specific questions asked by the board of selectmen or the beach task force, and were given in confidence. The commission found specifically that those documents were exempt from the act's disclosure requirements pursuant to General Statutes § 1-210 (b) (10)[3] and did not have to be disclosed. The plaintiff appealed to the trial court. The court dismissed the plaintiff's appeal, concluding that the decision of the commission was not illegal, arbitrary or an abuse of its discretion and that the legal findings of the commission flowed logically from the facts.

I

The attorney-client privilege was created "to encourage full and frank communication between attorneys

---

[2] There are four additional documents in question. They were submitted by Bergstresser for in camera review, along with a copy of the document that already had been disclosed.

[3] General Statutes § 1-210 (b) (10) provides that nothing in the act shall be construed to require disclosure of "records . . . or communications privileged by the attorney-client relationship . . . ."

and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co.* v. *United States,* 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). The plaintiff claims that by publishing the Elliot letter on the town's Internet web site and by providing the plaintiff with a copy, Bergstresser had impliedly waived the privilege as to *all* documents on the same subject by putting the legal advice "at issue."

The at issue exception to the protection of the attorney-client privilege is a doctrine of implied waiver by a party of that right. The at issue doctrine is invoked only when the contents of the legal advice are integral to the outcome of a legal claim or cause of action. "Such is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship." *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.,* 249 Conn. 36, 53, 730 A.2d 51 (1999). The party then impliedly waives the privilege "because the issue cannot be determined without an examination of that advice." Id.

Here, the legal advice rendered was not vital to the outcome of any pending litigation, nor was it "actually required for a truthful resolution of the issue . . . ." (Internal quotation marks omitted.) Id. The plaintiff's claim is based on a misinterpretation of the at issue doctrine. There is no pending litigation or claim involved here. Instead, we have a dispute between a citizen and the government of the town over different proposed beach access plans. No employee of the town, including Bergstresser, pleaded reliance on legal advice as an element of a defense or claim during the course of litigation. The at issue doctrine is one of implied

waiver, in certain limited situations, and does not apply to this situation.

## II

The plaintiff also claims that Bergstresser expressly waived the town's attorney-client privilege by disclosing one of the requested documents to the plaintiff and to the public, thereby allowing other information from the town's attorneys on the same subject to become public.

It is undisputed that a letter from outside counsel to Bergstresser was disclosed to the plaintiff, published on the town's web site and printed almost verbatim in the Greenwich Time. What is disputed is the legal significance of that document. Bergstresser argues that the letter is not and was not intended to be confidential or a privileged communication. If the letter was not a confidential communication between an attorney and a client, it would not be privileged and could not be the basis of the alleged waiver.

Resolution of that question rests on establishing the shifting dividing line between the competing public interests of openness in government and the protection of communications between attorney and client. The act promotes confidence and a sense of fairness in the democratic process. *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 233, 602 A.2d 1019 (1992). The attorney-client privilege doctrine promotes full and frank disclosure by clients to their attorneys in order to allow attorneys to provide competent, informed legal advice. *Upjohn Co.* v. *United States*, supra, 449 U.S. 389. The battle between the two competing interests, one requiring and the other prohibiting disclosure, has been resolved by the legislature in favor of the sanctity of the attorney-client privilege. Although that is true, it is also true that exemptions under the act are to be narrowly construed, with the burden of proving an exemption to be borne by the party claiming it. *New*

*Haven* v. *Freedom of Information Commission*, 4 Conn. App. 216, 219, 493 A.2d 283 (1985).

The plaintiff does not dispute that the other documents withheld by Bergstresser are privileged. There is also no factual dispute that the disclosure of the Elliot letter was voluntary. "[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege." (Internal quotation marks omitted.) *State* v. *Taft*, 258 Conn. 412, 421, 781 A.2d 302 (2001). The court found, however, that the disclosed letter was not subject to the attorney-client privilege and, therefore, disclosure of that letter did not constitute an express waiver of the privilege.

We must determine whether the letter that was disclosed to the public and to the plaintiff is a privileged document. The attorney-client privilege applies when the client is a town or other public agency, even if the attorney is not an employee of the town. See *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 11–12, 826 A.2d 1088 (2003). Communications between an attorney and a public agency are privileged if (1) the attorney is acting in a professional capacity for the agency, (2) the communications are made between the attorney and a current member of the public agency, (3) the communications relate to legal advice sought by the agency from the attorney and (4) the communications are made in confidence. *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 159, 714 A.2d 664 (1998).[4] The test in this case is whether the letter was informed legal advice that would not have been given if there were no

---

[4] We note that *Shew* involved communications from the town to an attorney. That case also stated that the privilege applies equally to the advice given by the attorney to a client. See *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 157. The *Shew* test has been applied to situations where the communications are arguably from the attorney to the town. See *Maxwell* v. *Freedom of Information Commission*, 260 Conn. 143, 148, 794 A.2d 535 (2002).

privilege. See id., 157–58. Here, the disclosed letter was not made in confidence, and the factual circumstances fail to meet the fourth prong of *Shew*.

Bergstresser, as first selectman, was ultimately responsible for a plan for access to parks that would comply with the holding of *Leydon*. The new access plan was a matter of great public interest. The town held various public meetings to allow citizens to air concerns and to hear from experts such as other town planners and from Elliot, one of the leading constitutional attorneys in the state. Bergstresser requested that Elliot write the letter that was made public for the very purpose of disclosure.[5]

The disclosed document does not render advice on strategy, comment on an adverse party's actions, make recommendations on a particular course of action or make similar tactical recommendations or decisions. It contains no legal advice for the future and was not intended to be confidential.

Although the letter was created by an attorney hired by the town, it was created for the purposes of helping a political leader to explain to his constituents the holding of *Leydon* and the need for the imposition of new ordinances in compliance with *Leydon*. It would strain the tenets of *Shew* to conclude that the letter that was voluntarily disclosed to the public and to the plaintiff created an express waiver of the attorney-client privilege.

---

[5] The first page of the document, a letter from Elliot to Bergstresser, states in relevant part: "Dear Dick: You have asked if I could write you a brief letter to help you answer continuing questions from townspeople about the meaning and scope of the Connecticut Supreme Court's opinion in the Beach Case [*Leydon* v. *Greenwich*, supra, 257 Conn. 318]. I will try to do so in this letter, while at the same time avoiding the sort of advice-giving that would transform this letter into a confidential communication protected by the lawyer-client privilege. I hope it helps you to explain the *Leydon* decision to your fellow citizens. . . ."

The judgment is affirmed.

In this opinion the other judges concurred.