JAMES A. LASH, FIRST SELECTMAN OF THE TOWN OF GREENWICH, ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(AC 30137)

Gruendel, Alvord and Pellegrino, Js.

Argued April 27—officially released August 4, 2009

*Valerie Maze Keeney*, assistant town attorney, for the appellants (plaintiffs).

*Eric V. Turner*, associate general counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (named defendant).

*Stephen Whitaker*, pro se, the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiffs James A. Lash, first selectman of the town of Greenwich, and the Greenwich board of selectmen appeal from the judgment of the Superior Court dismissing their administrative appeal from the decision of the defendant freedom of information commission (commission) in favor of the defendant Stephen Whitaker. On appeal before this court, the plaintiffs claim that the Superior Court improperly dismissed the appeal because the commission erroneously (1) found that they violated General Statutes § 1-210 (a)[1] by failing to provide prompt access to certain public records, (2) found that they failed to establish that two specific documents were exempt from disclosure under § 1-210 (b) (10)[2] and (3) imposed a civil penalty of $100

---

[1] General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have a right to (1) inspect such records promptly during regular office or business hours, (2) copy such records . . . or (3) receive a copy of such records . . . ."

[2] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (10) Records, tax returns, reports and statements exempted by federal law or state statutes or communications privileged by the attorney-client relationship . . . ."

against Lash pursuant to General Statutes § 1-206 (b) (2).[3] We agree that the Superior Court improperly dismissed the plaintiffs' appeal and, accordingly, reverse its judgment and remand the case for further proceedings.

The following facts and procedural history are relevant to our disposition of the plaintiffs' claims on appeal. In December, 2001, Whitaker submitted a written request to the board of estimate and taxation of the town of Greenwich, seeking certain geographical information system (GIS)[4] data (2001 request). Town officials denied Whitaker's 2001 request, and Whitaker subsequently filed a complaint with the commission.[5] In its final decision, the commission ordered the town to disclose the requested records with limited exceptions. The town appealed to the Superior Court and subsequently to our Supreme Court, both of which affirmed the decision of the commission. *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, 274 Conn. 179, 181–83, 874 A.2d 785 (2005).

After the litigation relating to the 2001 request finally was resolved, Whitaker sent a letter to Lash on August 11, 2005, via e-mail, seeking access to certain records related to the 2001 request. It is this latter communication that forms the basis of the current dispute. Specifically, the August, 2005 letter requested: (1) all written

---

[3] General Statutes § 1-206 (b) (2) provides in relevant part: "[U]pon the finding that a denial of any right created by the Freedom of Information Act was without reasonable grounds and after the custodian or other official directly responsible for the denial has been given an opportunity to be heard at a hearing . . . the commission may, in its discretion, impose against the custodian or other official a civil penalty of not less than twenty dollars nor more than one thousand dollars. . . ."

[4] "A GIS is a computer system capable of capturing, storing, analyzing, and displaying geographically referenced information; that is, data identified according to location." Geographic Information Systems, Poster, available at http://edc2.usgs.gov/publists/gis_poster (accessed 7/6/09).

[5] Whitaker's 2001 complaint was procedurally unrelated to the complaint filed with the commission in the present case.

communications to and from the town relating to the 2001 request; (2) all internal written communications of the town relating to the 2001 request; (3) any documents referencing potential risks to persons or property that would result from releasing the GIS data that was the subject of the 2001 request; (4) documents relating to the costs of litigating the freedom of information claim associated with the 2001 request, and (5) documents detailing funds accepted by the town for the purpose of pursuing that litigation. On August 22, 2005, Lash wrote to Whitaker indicating that he would be permitted to inspect nonexempt records "on file with the office of the First Selectman . . . on August 26, 2005, or on such earlier date as might be mutually agreeable to schedule the inspection."

Whitaker arrived at Lash's office on August 26, 2005, to inspect the records but was informed that a mistake had been made. He was told that the records would be available three days later on August 29, 2005, some eighteen days after the original request and seven days after Lash's response. Despite their admitted availability on August 29, Whitaker never returned to inspect the documents he had requested. Instead, on that same day, August 29, 2005,[6] Whitaker submitted a complaint to the commission in which he alleged, inter alia, that Lash violated the Freedom of Information Act (act), General Statutes § 1-200 et seq., by failing to provide access to the requested records.[7] On October 19, 2005, after the complaint was filed but before a hearing was held, the plaintiffs sent copies of the records that had been made available on August 29, 2005, to Whitaker.

[6] The record reflects that Whitaker's complaint was dated August 29, 2005, but that it was not stamped as received by the commission until September 9, 2005.

[7] Whitaker also alleged a violation of the act involving the fees charged by the town for preparing copies of documents requested pursuant to the act. That portion of the complaint is not at issue in this appeal.

Again, on November 3, 2005, additional documents were made available to Whitaker.

On November 8, 2005, a hearing was held before Victor R. Perpetua, a hearing officer for the commission. At that hearing, the plaintiffs submitted two documents, exhibits K and L, for in camera review by the hearing officer. Although Whitaker claimed that those documents were subject to disclosure, the plaintiffs asserted that they were privileged and thus exempt from disclosure under § 1-210 (b) (10). The hearing officer issued a proposed final decision on June 27, 2006, which the commission adopted with some modification at its regular meeting on August 9, 2006.

Specifically, the final decision of the commission found that the plaintiffs offered no evidence to prove that more than two weeks were required to produce the requested records and that they violated the act by, inter alia, "failing to provide prompt access to public records" and "failing to direct [Whitaker] to the custodian of the requested records or forward [his] request to the appropriate agency." In addition, despite the plaintiffs' assertion that exhibits K and L were protected by the attorney-client privilege, the commission found that the plaintiffs failed to meet their burden to demonstrate that those documents were indeed privileged and exempt from disclosure under the act. Finally, the commission found that Lash did not have reasonable grounds for his actions and that his acts were "entirely inconsistent with his responsibilities under the . . . [a]ct." As a consequence of these findings, the commission ordered that (1) Lash "take the necessary measures to inform requesters of the appropriate department which maintains the requested records," (2) the plaintiffs "strictly comply with the promptness requirements contained in § 1-210 (a)" and (3) Lash "remit to the [c]ommission a civil penalty in the amount of $100."[8]

---

[8] These orders do not indicate any prospective duty on the part of Lash with regard to the specific complaint at issue. Indeed, the commission's

On appeal, the plaintiffs claim that the commission (1) improperly determined that exhibits K and L were not protected by the attorney-client privilege, (2) abused its discretion by ordering Lash to pay a civil penalty and (3) improperly determined that Lash had the duty to provide access to documents that were not in his custody and not maintained by his office. The plaintiffs further claim that, in light of these improprieties, the court improperly dismissed their appeal. Before addressing these issues, we first set forth the standard of review applicable to administrative appeals involving the commission. "Ordinarily, [o]ur resolution of [administrative appeals] is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency. [W]e must decide, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . .

"A reviewing court, however, is not required to defer to an improper application of the law. . . . It is the function of the courts to expound and apply governing principles of law. . . . Questions of law [invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse

final decision did not include the hearing officer's proposed orders that would have required Lash to "make available to [Whitaker] any records in the custody of the town's law department or elsewhere" that related to the costs and expenditures relating to litigation of the 2001 request, and to "inquire of any other appropriate departments of the [town] whether they have any records responsive to [Whitaker's] request, and arrange for those records to be made available to [Whitaker]."

of its discretion. . . . [When a] case forces us to examine a question of law . . . our review is de novo." (Internal quotation marks omitted.) *Groton Police Dept.* v. *Freedom of Information Commission,* 104 Conn. App. 150, 156, 931 A.2d 989 (2007).

I

## ATTORNEY-CLIENT PRIVILEGE

At the hearing before the commission's hearing officer, the plaintiffs submitted two documents, exhibits K and L, for in camera review. The plaintiffs claimed that although the subject matter of the documents fell within the scope of Whitaker's freedom of information request, the documents were covered by the attorney-client privilege and thus were exempt from disclosure under the act. The hearing officer, the commission and the court nevertheless found that the plaintiffs did not meet their burden of establishing that the documents were privileged and ordered their disclosure.

Our resolution of the plaintiffs' claim necessarily depends on the scope and application of General Statutes §§ 1-210 (b) (10) and 52-146r. The former addresses the applicability of the attorney-client privilege in the context of a freedom of information request, and the latter addresses the privilege as it applies to government clients. Section 1-210 (b) (10) provides, inter alia, that documents exempted by state statute or protected by the attorney-client privilege are exempt from disclosure under the act. The complementary statute, § 52-146r (b), provides: "In any civil or criminal case or proceeding or in any legislative or administrative proceeding, all confidential communications shall be privileged and a government attorney shall not disclose any such communications unless an authorized representative of the public agency consents to waive the privilege and allow such disclosure."

"The attorney-client privilege was created to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Upjohn Co.* v. *United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)." (Internal quotation marks omitted.) *McLaughlin* v. *Freedom of Information Commission*, 83 Conn. App. 190, 194–95, 850 A.2d 254, cert. denied, 270 Conn. 916, 853 A.2d 530 (2004). In determining the scope of § 52-146r and its relationship to the act, our Supreme Court held in *Maxwell* v. *Freedom of Information Commission*, 260 Conn. 143, 149, 794 A.2d 535 (2002), that "the language of § 52-146r demonstrates that the essential elements of the common-law and statutory privileges are identical. At their core, both the common-law and statutory privileges protect those communications between a public official or employee and an attorney that are confidential, made in the course of the professional relationship that exists between the attorney and his or her public agency client, and relate to legal advice sought by the agency from the attorney." Thus, it concluded, that "§ 52-146r merely codif[ied] the common-law attorney-client privilege as this court previously had defined it." Id.

In light of that determination, our Supreme Court and this court have set forth a four part test to determine whether particular communications between a government agency and its attorneys are protected by the privilege. "The attorney-client privilege applies when the client is a town or other public agency . . . . Communications between an attorney and a public agency are privileged if (1) the attorney is acting in a professional capacity for the agency, (2) the communications are made between the attorney and a current member of the public agency, (3) the communications relate to legal advice sought by the agency from the attorney

and (4) the communications are made in confidence." (Citation omitted.) *McLaughlin* v. *Freedom of Information Commission*, supra, 83 Conn. App. 197, citing *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 159, 714 A.2d 664 (1998); accord *Maxwell* v. *Freedom of Information Commission*, supra, 260 Conn. 148–49.

Despite this precedent, the court failed to address those four *Shew* elements in its analysis of the plaintiffs' claim. Instead, it held that the plaintiffs were required to produce extrinsic evidence to demonstrate that the documents were privileged. Because the plaintiffs produced no extrinsic evidence on this point, it held that they failed to meet their burden of proof. Cf. *State* v. *Hanna*, 150 Conn. 457, 466, 191 A.2d 124 (1963) ("[t]he burden of proving the facts essential to the privilege is on the person asserting it"). The court reached this conclusion despite the fact that it, like the commission, had access to the documents for in camera review.[9]

The court's conclusion that the plaintiffs were required to present extrinsic evidence is inconsistent with the precedent of our Supreme Court and with the regulations of the commission. In *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 11–12, 826 A.2d 1088 (2003), the Supreme Court indicated that a trial court may indeed review documents at issue in camera and use them as evidence to determine whether they are privileged. In addition, the commission's regulations indicate that a party may request an in camera inspection of a record to determine if an exemption applies. See Regs., Conn. State Agencies § 1-21j-37 (e). We thus conclude that introduction of extrinsic evidence is not necessarily required to demonstrate the existence of

---

[9] We note that the court's memorandum of decision does not indicate that it ever examined the documents in question. We also note that the commission conceded in its brief to the Superior Court that the documents were communications between Lash and the assistant town attorney acting in their official capacities and that the documents relate to pending litigation.

privilege in a case before the commission. Therefore, we reverse the court's finding that exhibits K and L are not privileged and remand the case for a review of exhibits K and L in camera to determine if they meet the four *Shew* factors.

## II

## CIVIL PENALTY

We next address the plaintiffs' claim that the commission acted arbitrarily, capriciously or in abuse of its discretion in ordering Lash to pay a $100 civil penalty. General Statutes § 1-206 (b) (2) provides in relevant part: "[U]pon the finding that a denial of any right created by the Freedom of Information Act was without reasonable grounds and after the custodian or other official directly responsible for the denial has been given an opportunity to be heard . . . the commission may, in its discretion, impose against the custodian or other official a civil penalty of not less than twenty dollars nor more than one thousand dollars. . . ." The commission argues that the civil penalty was justified based on the "the denial of Mr. Whitaker's right to access public records under the . . . act" and the plaintiffs' "fail[ure] to provide prompt access to public records."[10] We address each of these in turn.

## A

## Access to Records

Looking first at the alleged denial of Whitaker's right to access public documents, there existed two classes

---

[10] The commission also asserts that the civil penalty was based on Lash's "disavowal of responsibility for providing access to records . . . disavow[al] [of] knowledge of records . . . and declining to exercise his authority as chief executive officer of the town to produce records . . . ." The commission has not found or otherwise indicated that these alleged actions denied any *right*, as required by the act, and, therefore, they may not be used as bases for the imposition of a penalty under § 1-206 (b) (2).

of documents to which Whitaker sought access: those that the plaintiffs claimed were privileged and those that they did not claim were privileged. With regard to the former, it is clear that the claim of exemption and privilege is at least reasonable. The plaintiffs claimed that exhibits K and L were protected by the attorney-client privilege, and in light of the *Shew* factors and their application to those documents, it is apparent that their claim is a colorable one. Thus, the civil penalty could not have been assessed for failure to provide access to those documents.[11]

Specifically, we note that exhibit K states on its face that it is from the assistant town attorney to Lash, the first selectman, thereby bearing on the analysis of the first and second *Shew* factors. The document also states that it is regarding the "GIS appeal" and discusses strategy and status relating to that litigation, which was pending at the time, thereby implicating the third requirement. With regard to the requirement that the communication be made in confidence, the face of the document states: "CONFIDENTIAL Attorney-Client Communication DO NOT DISCLOSE." Although the fact that "a document expressly is marked as 'confidential' is not dispositive, [it is] one factor a court may consider in determining confidentiality." *Blumenthal* v. *Kimber Mfg., Inc.,* supra, 265 Conn. 15. In addition, as noted previously, the communication was between the assistant town attorney and Lash, the town's first selectman. Only five people received carbon copies, all of whom were members or employees of the town government. See *Shew* v. *Freedom of Information Commission,* supra, 245 Conn. 159 (attorney-client privilege protects communications with " 'current employees or officials' "); see also *Blumenthal* v. *Kimber Mfg., Inc.,*

---

[11] We also point out that the commission may not find that it was wrongful to withhold documents for which a good faith claim of exemption is made without first ruling on the applicability of the exemption.

supra, 16 ("exclusivity and limited number of distributees signifies that the [communication] was intended to be confidential" [internal quotation marks omitted]).

Turning to exhibit L, that document states on its face that it is from an assistant town attorney to five officers and employees of the town, again implicating the first and second *Shew* factors. It discusses a suggestion by an officer or employee of the town relating to pending litigation, thus implicating the third factor. Although exhibit L does not indicate on its face that it is confidential, as noted previously, "[w]hether a document expressly is marked as 'confidential' is not dispositive, but is merely one factor a court may consider in determining confidentiality." *Blumenthal* v. *Kimber Mfg., Inc.*, supra, 265 Conn. 15. The only parties to the communication are officers and employees of the town, and there is no indication that any other party ever had access to the document. See *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 159 (attorney-client privilege protects communications with " 'current employees or officials' "); see also *Blumenthal* v. *Kimber Mfg., Inc.*, supra, 16 ("exclusivity and limited number of distributees signifies that the [communication] was intended to be confidential" [internal quotation marks omitted]). Thus, in light of the applicable *Shew* standard, it is apparent that the plaintiffs' claims of privilege and exemption were not "without reasonable grounds," and the commission was precluded from imposing a civil penalty on that basis. See General Statutes § 1-206 (b) (2).

With regard to the latter class of documents to which Whitaker sought access—namely, documents for which no privilege or exemption was claimed—the record is devoid of any evidence that would suggest that Lash failed to turn over any requested nonexempt documents to Whitaker or his attorney, and the commission made no finding that any documents responsive to Whitaker's

request (other than exhibits K and L) were withheld. Indeed, the record reflects that Lash sent the requested nonexempt documents to Whitaker free of charge, and, upon learning of the existence of other information responsive to Whitaker's request, Lash forwarded that information as well. Thus, the commission was not justified in imposing a civil penalty on the basis of any alleged failure to disclose on the part of Lash.

## B

### Prompt Disclosure

We next turn our attention to the commission's argument that the plaintiff denied Whitaker the right to receive copies of the requested records "promptly . . . ." General Statutes § 1-212 (a).[12] In its final decision, the commission found that "the [plaintiffs] offered no evidence to prove that more than two weeks were required to produce [the records] . . . . It is therefore concluded that the [plaintiffs] violated § 1-210 (a) . . . by failing to provide prompt access to public records." Neither the commission's decision nor the administrative record reveals the reason, if any, that the commission determined that two weeks was an appropriate time limitation for Lash to comply with Whitaker's request, and no such limitation appears in any applicable statute or regulation. As such, we conclude that the time limitation of two weeks imposed by the commission is an arbitrary limitation and thus an abuse of discretion. See General Statutes § 4-183 (j) (6).[13] As a

---

[12] General Statutes § 1-212 (a) provides in relevant part: "Any person applying in writing shall receive, *promptly* upon request, a plain or certified copy of any public record. . . ." (Emphasis added.)

[13] General Statutes § 4-183 (j) provides in relevant part: "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

result, the commission's conclusion that the plaintiffs failed to provide prompt access to the records requested by Whitaker cannot stand, nor can its imposition of a civil penalty.[14]

## III

## LASH'S DUTY

In their final claim, the plaintiffs assert that the commission improperly determined that, as the chief executive officer of the town of Greenwich, Lash "has the responsibility to arrange for the production of public records maintained by agencies for which he is responsible." It concluded that Lash has a duty to respond to freedom of information requests for subdivisions of the town and, at a minimum, must "direct the [requestor] to the custodian of the requested records or forward the [requestor's] request to the appropriate agency."

In reaching that conclusion, the commission considered the responsibilities of Lash as set forth in the Greenwich town charter. The applicable provision of that document provides in relevant part: "All administrative functions relative to police, fire, highways, sewers and other public works, building inspection, parks, recreation, law, fleet management and purchasing for

---

[14] At oral argument before this court, the commission maintained that, even after Whitaker's complaint was filed, the plaintiffs were not entitled to await a ruling by the commission before disclosing documents responsive to Whitaker's request. It further asserted that the commission was entitled to consider the period of time during which the case was pending before it and during which there was an ongoing dispute as to Lash's duties, in determining whether he promptly provided access to the requested documents. In other words, the commission claims that the clock continued to run for purposes of determining promptness during the pendency of the case before the commission. Such an assertion has no basis in the law or the facts; indeed, that claim is counter to both logic and the purposes of the commission as an adjudicative body. It would be counterintuitive for the commission to penalize a public agency for failure to disclose documents in a timely manner when the delay is due, at least in part, to the proceedings before the commission itself.

such purposes, shall be divided, under the supervision and control of the First Selectman, among administrative departments which shall include the Department of Police, Fire, Public Works, Parks and Recreation, Law, and Fleet Management. The First Selectman shall have the supervision and control, and shall be responsible for the administration, of all the affairs of the Town in respect to such departments . . . . The First Selectman shall be the chief executive officer of the town and the town agent and shall devote his full time to the duties of his office." Greenwich Charter § 217.

Specifically at issue is whether Lash had a duty to inquire of the town law department as to whether it had possession of any documents that would be responsive to Whitaker's freedom of information request. In light of the conclusion of the commission and the court that the town charter imposes a duty on Lash to respond to all freedom of information requests on behalf of the departments for which he is responsible, we must construe the charter in order to determine if the commission and court were correct.[15] "As with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary." (Internal quotation marks omitted.) *Kelly* v. *New Haven,* 275 Conn. 580, 607, 881 A.2d 978 (2005).

Although the charter makes Lash responsible for the administration of town affairs with respect to the law department and places that department under his supervision and control, the terms "administration" and "supervision and control" are left undefined by the charter. The charter does not impose any specific duties on the first selectman with regard to the law department.

---

[15] The commission also found that "the chief executive officer of a public agency has the responsibility to arrange for the production of public records maintained by agencies for which he is responsible." The commission, however, abandoned this broader position at oral argument before this court.

Furthermore, the charter creates the town's law department and provides that "[t]he head of the Law Department shall be the Town Attorney, who shall . . . be the legal adviser of, and attorney and counsel for, the Town government and all departments and officers thereof, in matters relating to the Town's interests or their official powers and duties, and shall provide through the office organization all legal services required." Greenwich Charter, supra, § 235.

The charter and its provisions regarding the first selectman and the law department must be analyzed in the context of the applicable statutory framework. General Statutes § 1-200 (1) provides in relevant part: " 'Public agency' or 'agency' means: (A) . . . [A]ny department . . . authority or official of the state or of any city, town, borough, municipal corporation . . . including any committee of, or created by, any such . . . department . . . ." Thus, as a department of the town of Greenwich, it is clear that the law department is an agency in its own right under the administrative supervision of the town attorney. In setting forth the disclosure requirements for public agencies, § 1-210 (a) requires that "all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records . . . . Each such agency shall keep and maintain all public records in its custody . . . ." It is undisputed that the records of the law department are not kept on file by or in the custody of the first selectman's office but, rather, are maintained by the law department itself. Although both the first selectman and the law department may be public agencies for the purposes of the act; see General Statutes § 1-200 (1) (A); as *distinct* agencies, Lash has no duty to maintain or make available the records of the law department, just as the law department has no duty to maintain or disclose the records of the first selectman.

Furthermore, our conclusion is consistent with the commission's own decision in *Chikara* v. *Governor, State of Connecticut,* FIC 1996-556 (August 27, 1997). In that case, Chikara requested documents from Governor Rowland related to grant applications kept on file with various agencies within the state. The commission found that the governor was a public agency within the meaning of the act and that he was "the administrative agent" ultimately responsible for the specific funds that were the subject of Chikara's request. It concluded, however, that the governor was not required by law to maintain the requested records in his custody. It further concluded that "the responsibility to provide copies of the records rests with the individual agency which maintains and has custody of any portion of the requested records." Id. The same logic and reasoning apply to this case, and it is clear that one public agency may not be held responsible for disclosing the public records in the custody of another public agency. Thus, by concluding that Lash is ultimately responsible for all freedom of information requests to any agency of the town of Greenwich over which he has supervision and control, the commission improperly interpreted the Greenwich charter and incorrectly applied the act.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

